UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-10021-CR-MOORE/SIMONTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CARLOS REYES,

    Defendant.
_____/

## ORDER GRANTING GOVERNMENT'S MOTION IN LIMINE
## TO ADMIT RULE 404(b) EVIDENCE

Presently pending before the Court is the Government's Motion in Limine to Admit Rule 404(b) Evidence (DE # 27). This motion is referred to the undersigned Magistrate Judge (DE # 8). The Defendant has responded to the Motion (DE # 40), and a hearing was held on October 6, 2009. For the reasons set forth below, the Motion is granted, on a preliminary basis, on the grounds that the Government has met the threshold prerequisites for admissibility of this evidence. However, recognizing that the trial court will be in the best position to make an ultimate determination of admissibility based upon the events at trial, this ruling is without prejudice to the Defendant's right to renew his objection to this evidence at trial based upon the course of the trial proceedings.

    I.    **BACKGROUND**

On May 15, 2009, Defendant Carlos Reyes was charged in a 59-count Indictment with various alien smuggling offenses that occurred in October 2009 (DE # 1). Specifically, in Count 1 he is charged with participating in a conspiracy to violate 8 U.S.C. § 1324(a)(1)(A)(iv), which makes it an offense to encourage and induce aliens to

come to, enter and reside in the United States, knowing and in reckless disregard of the fact that this was in violation of the law, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  This Count further alleges that this conduct resulted in the death of J.V.H.,  and, therefore pursuant to 8 U.S.C. § 1324(a)(1)(B)(iv), the maximum potential sentence for this offense is life imprisonment.

In Count 2 through 30, the Defendant is charged with the corresponding substantive offenses of knowingly encouraging and inducing 29 specified aliens to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that this was in violation of the law, with this conduct resulting in the death of J.V.H., in violation of  8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(iv), and 18 U.S.C. § 2.  Each of these Counts identifies a specific alien by name.  The maximum potential sentence for these offenses is life imprisonment.

In Counts 31 through 59, the Defendant is charged with the corresponding substantive offenses of attempting to bring to the United States 29 specified aliens, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that the specified alien had not received prior official authorization to come to, enter, and reside in the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and 18 U.S.C. § 2.  The potential sentence for a first or second violation of this statute is not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

The following facts concerning this offense are based on the proffer of the Government at the hearing, as well as a review of the related case in which the co-conspirators were prosecuted (Case No. 05-10028-CR-MOORE).  On October 13, 2005, the U.S. Coast Guard Cutter DAUNTLESS intercepted a suspected alien smuggling

vessel carrying 31 people.  The vessel capsized, and a 6-year old boy drowned.  The two operators of the vessel, Alexander Gil-Rodriguez and Luis Manuel Taboada-Cabrera were subsequently charged with alien smuggling offenses, and pled guilty to conspiracy to encourage and induce aliens to come to and enter the United States unlawfully (Case No. 05-10028-CR-MOORE).   On March 20, 2006, they were each sentenced to serve a term of 120 months of incarceration for this offense.   The Government subsequently moved to reduce the sentence of Gil-Rodriguez based upon the provision of substantial assistance to the Government; and, on February 4, 2008, his sentence was reduced to 60 months of incarceration.  Both Gil-Rodriguez and Taboada-Cabrera are potential Government witnesses at the trial in this case.

According to the proffer of the Government, Gil-Rodriguez will testify that there were three organizers of this smuggling trip, one of whom is Defendant Carlos Reyes.[1] Gil-Rodriguez and Taboada-Cabrera traveled from Key West, Florida, in a 33-foot vessel, to the coast of Cuba, where they picked up 29 Cuban aliens for the purpose of smuggling them into the United States.  As stated above, they were detected by law enforcement, and intercepted by the Coast Guard en route back to the United States. The role of Defendant Reyes was to provide a satellite telephone and GPS, and, show the crew members (Gil-Rodriguez and Taboada) how to use the GPS.  In addition, Reyes programmed his telephone number into the satellite telephone.  Reyes also was involved in coordinating the smuggling venture by making calls to Cuba to arrange for the rendevous to pick up the Cuban aliens on the shore in Cuba.  The testimony of Gil-Rodriguez is corroborated by certain hotel records which show that a reservation was

---

[1]  The Government also stated that co-conspirator Taboada-Cabrera may also testify.

3

made at a Days Inn in Key West in Reyes' name during the time frame of the smuggling venture, but using the address and phone number of one of the co-organizers of the trip; and, by satellite telephone records that show several calls during the course of the smuggling venture between the satellite telephone and a telephone number used by the Defendant.

## II. THE PROPOSED 404(B) EVIDENCE

### A. Defendant Reyes' Prior Conviction

The Government seeks to introduce into evidence a certified copy of the Judgment of Conviction of Defendant Carlos Reyes in Case No. 03-20898-CR-LENARD, excluding the sentencing information. The Judgment reflects that he was convicted of conspiracy to commit alien smuggling, in violation of 18 U.S.C. § 371, and sentenced on June 14, 2004. According to the Judgment, the offense ended on September 23, 2003 (DE # 87). The Government stated at the hearing that it did not intend to elicit any testimony regarding this conviction. However, Government counsel proffered the following underlying facts of this conviction. On September 23, 2003, the U.S. Coast Guard Cutter CORMORANT intercepted a 25-foot go-fast vessel heading west from Bimini, Bahamas. Defendant Carlos Reyes was piloting the boat, and also on board were crew member Carlos Vega and seven Cuban nationals who lacked permission to enter the United States. Three GPS devices, a cell phone, a satellite phone, a .40 caliber Glock pistol, and an envelope containing $11,600 in cash were found on board the vessel. On March 24, 2004, Defendant Reyes pled guilty to a Superseding Information, and he was subsequently sentenced to serve two years of probation, with six months of home confinement.

**B.   Recorded Conversations on August 2, 2006 and October 3, 2006**

The Government also seeks to introduce into evidence the entirety of two conversations between Defendant Reyes and Juan Gil-Rodriguez, the brother of co-conspirator Alex Gil-Rodriguez.  The Government stated at the hearing that it intended to present the testimony of Juan Gil-Rodriguez regarding these two meetings, and play only excerpts from the transcripts.[2]  These transcripts were submitted to the Court at the hearing, marked as Government Exhibits 8 and 9.

The first conversation, which is transcribed in Exhibit 8, occurred on August 2, 2006.  The transcript of the conversation reflects numerous unintelligible portions.  However, the Government has proffered that the conversation involves direct evidence of the charged smuggling venture, as well as Reyes' statements regarding his involvement in past smuggling ventures.  In addition, during this conversation Juan Gil-Rodriguez requests the Defendant to help him earn money by becoming involved in a future smuggling venture.  The Defendant responds, in essence, that the risk of getting caught is too great at the present time.  Although the transcript reflects unintelligible portions of the conversation, a review of the transcript reflects that conversation concerning these topics occurred.

The second conversation, which is transcribed in Exhibit 9, occurred on October 3, 2006.  This transcript also reflects unintelligible portions of the conversation.  Although Alex Gil-Rodriguez is mentioned during the meeting, this conversation does not concern the crime charged in the case at bar, but contains a discussion regarding the Defendant programming a GPS for a smuggling venture, and how people who want

---

[2]  **Defense counsel stated at the hearing that he objected to the Government playing isolated excerpts, and that he intended to play the entire conversations.**

to be smuggled into the United States are getting caught in Cuba. In addition, the Defendant says that he hasn't been involved in arranging any smuggling trips because he doesn't have the money to spend since it costs $3,000 to $4,000 for each trip, and he no longer has a boat.

Thus, the Government seeks to introduce into evidence testimony and recordings regarding the Defendant's statements about past smuggling ventures he was involved in, future smuggling ventures, and his assistance to a smuggling venture by programming a GPS.

### III. FRAMEWORK FOR ANALYSIS

In the Eleventh Circuit, the standard for admission of extrinsic bad act evidence under Rule 404(b) requires a showing that the evidence 1) is relevant to an issue other than the defendant's character; 2) is established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and 3) the probative value of the evidence must not be substantially outweighed by unfair prejudice and must meet the other requirements of Rule 403. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003); *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995); *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995), *citing United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978).

Numerous cases have upheld the admission of evidence of prior acts of alien smuggling for the purpose of showing that the defendant committed the charged offense in knowing fashion or with reckless disregard of the aliens' illegal status. For example, in *United States v. Gari*, 572 F.3d 1352, 1364 (11th Cir. 2009), where the defendant was charged with smuggling Cuban nationals into the United States on a boat, the Eleventh Circuit upheld the admission of evidence that "on a date not very remote in time from the

6

date of the charged conduct, [the defendant] was found on a boat with a group of undocumented Cuban aliens and instructed that attempting to bring undocumented aliens into the United States is a crime." The Court emphasized that this testimony was highly relevant to prove the scienter element of the offense.

Similarly, in *United States v. Perez*, 443 F.3d 772, 778-80 (11th Cir. 2006), the Eleventh Circuit Court of Appeals upheld the admission of evidence of a 2002 alien smuggling conviction in the trial of a 2004 alien smuggling offense. The prior conviction resulted from the activities of defendant Perez in providing fuel to a stranded boat which had onboard a number of Cuban nationals who were en route to the United States. Perez initially claimed that he was on a rescue mission, but later pled guilty. The 2004 case for which Perez was on trial involved a scenario in which Cuban nationals were found hidden in the cabin of Perez's boat, following its arrival at Matheson Hammock marina in Miami-Dade County, Florida, and after the boat had been loaded onto a trailer. In determining that the trial court had not abused its discretion in admitting evidence of the 2002 prior conviction, the Court provided the following analysis:

> The evidence of Perez's prior alien-smuggling conviction was relevant to establish his state of mind with respect to the conspiracy offense, as well as to the six substantive alien-smuggling counts. "One of the elements of conspiracy that the prosecution must establish beyond a reasonable doubt is an intention to further the purposes of the conspiracy." When a defendant charged with conspiracy enters a plea of not guilty, as in this case, he makes intent a material issue in the case. Perez did not "affirmatively take the issue of intent out of contention by stipulating that [he] possessed the requisite intent." . . . In fact, by his theory of defense–that he did not know the aliens' illegal status–he expressly made his knowledge and intent a focal point of the case, plainly making the evidence of his prior conviction admissible for non-propensity purposes. Moreover, the prior conviction was relevant to Perez's claim that the government did not carry its burden of establishing that he brought the aliens to the United

> States "knowing or in reckless disregard of the fact that [the aliens] ha[d] not received prior official authorization to come, enter or residence in the United States."  See 8 U.S.C. § 1242(a)(2).
>     . . . . Finally, we are satisfied the district court did not abuse its discretion when it determined the probative value of Perez's prior conviction, which involved *another* alien-smuggling offense *and* took place less than two years before the instant offense, outweighed its prejudicial effect. . . . This determination lies within the discretion of the district court and "calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."

443 F.3d at 779-80 (internal citations omitted).  *Accord United States v. Hernandez-Guevara*, 162 F.3d 863, 869-74 (5th Cir. 1998) (upholding admissibility of two prior alien smuggling convictions, one in 1979 and one in 1996, to prove intent and lack of mistake in connection with charges related to alien smuggling in 1997); *United States v. Robles-Vertiz*, 155 F.3d 725, 730 (5th Cir. 1998) (evidence of defendant's prior conviction for smuggling aliens relevant and admissible to undercut defense that he thought he was assisting a United States citizen and made an honest, good-faith mistake); *United States v. Ramirez-Jiminez*, 967 F.2d 1321 (9th Cir. 1992) (court upheld admission of evidence that defendant had previously been seen at residence used in the transportation of illegal aliens, in the company of an individual who was later arrested while driving a stolen truck which carried illegal aliens; where the defendant was charged with smuggling aliens in a stolen truck, and the aliens said that they had been taken to the truck from a "drop house").

    IV.    <u>**THE PROPOSED EVIDENCE IN THE CASE AT BAR MEETS THE THRESHOLD REQUIREMENTS FOR ADMISSION**</u>

As stated above, the Eleventh Circuit Court of Appeals has endorsed a three-step analysis to determine whether evidence of other bad acts is admissible.  First, the

Government must establish that the evidence is relevant to an issue other than the defendant's character.  The prior conviction, as well as the Defendant's conversations regarding his involvement in past, and future, smuggling ventures appears to meet this requirement since they will be used to show the Defendant's intent to commit the charged offense.[3]  One of the anticipated defenses is that the Defendant was merely present in the vicinity of the other organizers in Key West during the course of the smuggling venture, and that if he programmed a GPS it was unwittingly in furtherance of the charged alien smuggling venture.  The recorded conversations, as well as the prior conviction, therefore appear to be highly probative of the Defendant's intent.

Second, the Government must establish that the Defendant committed the extrinsic act.  This requirement has also been met–the Government will rely upon a certified copy of the judgment of conviction with respect to the prior alien smuggling conviction.  In addition, with respect to the conversations with Juan Gil-Rodriguez, the tape recordings of the Defendant's own words, as explained by Gil-Rodriguez, are being used to establish his involvement in past and future smuggling ventures.

Finally, the probative value of the evidence must not be substantially outweighed by unfair prejudice, and must meet the other requirements of Rule 403.  As noted by the Eleventh Circuit in *Perez, supra.*, this determination calls for a common sense determination, based on all of the circumstances surrounding the extrinsic act, including prosecutorial need, overall similarity between the charged offense and extrinsic act, and temporal remoteness.  Initially, the undersigned notes that the need for this evidence is great.  The Defendant was not on the boat carrying the aliens, and his role was that of an

---

[3] In addition, the taped conversations corroborate the proffered testimony that the Defendant had the knowledge to program a GPS device.

9

organizer and on-shore coordinator.  His presence in Key West, his provision of a satellite phone and GPS, his act of training the boat crew in the use of a GPS, and the existence of phone calls during the course of the smuggling venture could all have innocent explanations.  To establish that the Defendant was a knowing and willing participant in the alien smuggling venture, the Government is relying primarily on the testimony of a convicted co-conspirator who cooperated for the purpose of obtaining a sentence reduction; and, who (as pointed out by defense counsel at the hearing), failed to mention Carlos Reyes in his initial debriefings regarding this offense.  Thus, there is a great need for evidence to establish criminal intent and knowledge of the illegal nature of the smuggling venture.  Moreover, the circumstances of these extrinsic events are not egregious, and are not unduly prejudicial.  The Government estimated that presenting the 404(b) evidence would consume only 20 or 30 minutes of the Government's case in chief.  Finally, the extrinsic acts are not remote in time.  The undersigned notes that the prior alien smuggling conviction occurred only two years before the presently charged offense; and, the conversations occurred within one year after the presently charged offense.

     Based upon the foregoing analysis, the undersigned finds that the threshold prerequisites for admissibility of this evidence pursuant to Rule 404(b) have been met, and therefore the motion in limine should be granted.  However, the undersigned recognizes that this determination is made, in part, based upon speculation of what the Government's other evidence, and the defenses in this case, will be.  Thus, the trial court will be in a better position to make an ultimate determination of admissibility based on whether the issue of intent has become a material issue in the case, and how substantial the need for this evidence is.  In addition, the District Court is in a better position to

determine whether, pursuant to Rule 403, considerations of undue delay, waste of time, or needless presentation of cumulative evidence tip the balance in favor of exclusion.[4] Therefore, the undersigned concludes that although the Government has met the basic requirements for the introduction of Rule 404(b) evidence, and therefore the motion in limine should be conditionally granted, this Order is without prejudice to the Defendant's right to seek exclusion of this evidence at the trial.

It is therefore

**ORDERED AND ADJUDGED** that the Government's Motion in Limine to Admit Rule 404(b) Evidence (DE # 27) is **GRANTED**.

**DONE AND ORDERED** in chambers in Miami, Florida on October 7, 2009.

*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
**The Honorable K. Michael Moore**
        **United States District Judge**
**All counsel of record**

---

[4] In this regard, the undersigned notes that evidence of the prior conviction for alien smuggling is somewhat duplicative, although less detailed, than the generic conversation of the Defendant regarding past smuggling ventures, and the Court may well determine that evidence of this aspect of the conversation is therefore cumulative and unnecessary.