**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-10021-CR-MOORE/SIMONTON**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**

**CARLOS REYES,**

      **Defendant.**

_____/

## ORDER GRANTING, IN PART, GOVERNMENT'S MOTION IN LIMINE TO ADMIT PUBLIC RECORD

Presently pending before the Court is the Government's Motion in Limine to Admit Public Record Pursuant to FED. R. EVID. 803(8) (DE # 31).  This Motion is referred to the undersigned Magistrate Judge (DE # 8).  The Defendant filed an expedited Response to the Motion due to the imminent trial date (DE # 40), and a hearing was held on October 6, 2009.  At the conclusion of the hearing, the undersigned Magistrate Judge orally advised the parties that the Government's motion was granted, as limited by the Government at the hearing, with respect to that portion of the record which sets forth the names of the aliens who were taken aboard the Coast Guard Cutter DAUNTLESS.[1] This Order incorporates the ruling made from the bench at that hearing.  However, recognizing that this ruling is based upon the proffer of the Government regarding the expected testimony at trial, and that the trial court will be in the best position to make an ultimate determination of admissibility based upon the events at trial, this ruling is without prejudice to the Defendant's right to renew his objection to this evidence at trial

---

[1]  In its motion, the Government initially sought to admit that portion of the record which contained the date of birth and nationality of the aliens as well as their names, but at the hearing the Government limited its request to the names only.

based upon the course of the trial proceedings.

I.    BACKGROUND

On May 15, 2009, Defendant Carlos Reyes was charged in a 59-count Indictment with various alien smuggling offenses that occurred in October 2009 (DE # 1). Specifically, in Count 1 he is charged with participating in a conspiracy to violate  8 U.S.C. § 1324(a)(1)(A)(iv), which makes it an offense to encourage and induce aliens to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that this was in violation of the law, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  This Count further alleged that this conduct resulted in the death of J.V.H.,  and, therefore pursuant to 8 U.S.C. § 1324(a)(1)(B)(iv), the maximum potential sentence for this offense is life imprisonment.

In Counts 2 through 30, the Defendant is charged with the corresponding substantive offenses of knowingly encouraging and inducing 29 specified aliens to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that this was in violation of the law, with this conduct resulting in the death of J.V.H., in violation of  8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(iv), and 18 U.S.C. § 2.  Each of these Counts identifies a specific alien by name.  The maximum potential sentence for these offenses is life imprisonment.

In Counts 31 through 59, the Defendant is charged with the corresponding substantive offenses of attempting to bring to the United States 29 specified aliens, for the purpose of commercial advantage and private financial gain, knowing and in reckless disregard of the fact that the specified alien had not received prior official authorization to come to, enter, and reside in the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and 18 U.S.C. § 2.  The potential sentence for a first or second violation

2

of this statute is not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

The following facts concerning this offense are based on the proffer of the Government at the hearing, as well as a review of this Court's records, including the related case in which the co-conspirators were prosecuted (Case No. 05-10028-CR-MOORE).  For purposes of this Motion only, the facts are stated as proffered by the Government, recognizing that the evidence at trial may differ.  Defendant Carlos Reyes was one of three organizers of a smuggling venture which was designed to retrieve Cubans from the coast of Cuba and bring them into the United States.  On or about October 10, 2003, co-conspirators Alexander Gil-Rodriguez and Luis Taboada-Cabrera departed Key West in a 33-foot vessel and traveled to the coast of Cuba.  When they arrived near the shore, 29 Cuban aliens waded to the boat and boarded.  The vessel then began its journey back to Key West.  On October 13, 2005, the U.S. Coast Guard Cutter DAUNTLESS intercepted the vessel following a high-speed chase.  The vessel capsized, and a 6-year old boy drowned.  The two operators of the vessel, Alexander Gil-Rodriguez and Luis Manuel Taboada-Cabrera were subsequently charged with alien smuggling offenses, and pled guilty to conspiracy to encourage and induce aliens to come to and enter the United States unlawfully (Case No. 05-10028-CR-MOORE).

The Coast Guard rescued 30 people from the water, including the two vessel operators.  Hours later they discovered the body of the 6-year old child, who was trapped underneath the capsized hull.  When the 30 survivors reached the deck of the DAUNTLESS, Petty Officer Gabriel Guzman asked each survivor for his or her name, date of birth and nationality.  He then placed an identification bracelet on each of the survivors.  He conveyed this information, as well as the name of the deceased child

(which was provided by the parents), to Lieutenant Lyle Server, who incorporated the information into a record called a Situation Report (referred to hereinafter as "SITREP" or "Report").  It is this Report which is the subject of the pending motion.[2]

    II.    <u>THE PRESENTLY PENDING MOTION TO ADMIT PUBLIC RECORDS</u>

In its motion, the Government initially sought to introduce that portion of the Situation Report which contained the name, date of birth and nationality of the thirty-one people who were interdicted on that vessel.  However, during the hearing on the Motion, the Government amended its request and indicated that it now only seeks to introduce the names of the aliens on the boat as indicated in that Report.[3]  The Government advances the following three arguments for its position that portions of the SITREP should be admitted into evidence at trial: 1) the names of the aliens are not hearsay; 2) the SITREP is admissible as a public record pursuant to Fed. R. Evid. 803(8); and 3) the SITREP is non-testimonial evidence and therefore its admission will not violate the Defendant's rights to confrontation under the Sixth Amendment to the United States Constitution.

The Defendant counters in its written opposition, as well as at the hearing on the

---

[2]  A copy of the report has been filed at docket entry number 32.

[3]  The SITREP at issue contains several different sections related to the incident (DE # 32-2).  The first portion of the SITREP entitled "Situation" provides a relatively comprehensive narrative of the Coast Guard vessel DAUNTLESS' interaction with the subject vessel from the initial report until the vessel was towed.  The second portion of the SITREP entitled "Action" sets out step by step the actions taken by the DAUNTLESS and its crew.  The third section is entitled "Future Plans", the fourth section "Vessel" and the fifth section "Crew".  Listed in the "Crew" section are the names, dates of birth and nationality of the persons aboard the vessel.  Finally, sections six and seven are entitled "Case Status" and "Remarks", respectively.  The Government only seeks to introduce that portion of Section five that lists the names given by the persons who were brought  on board the DAUNTLESS.

Motion, that the SITREP does not meet any of the hearsay exceptions contemplated by the Federal Rules of Evidence and may not be admitted pursuant to Rule 803(8) because it contains "matters observed by . . . law enforcement personnel" which are expressly excluded from this hearsay exception in the context of a criminal prosecution.  In addition, relying on *Crawford v. Washington*, 541 U.S. 36 (2004), the Defendant asserts that the names given by the aliens are hearsay which must be excluded because the Indictment specifically identifies the aliens by name, and the Defendant has a right to confront those witnesses.

At the hearing, the Government proffered facts that it expected to elicit at trial regarding the regular procedures of the Coast Guard when the Coast Guard is involved in an event in which persons are brought on board a Coast Guard cutter, and how the names of the aliens at issue here were obtained by the Coast Guard and incorporated into a SITREP.  Specifically, the Government asserted that a SITREP is created every time the Coast Guard is involved in bringing  persons on board its vessel–whether it involves the chase of a go-fast boat suspected of smuggling as in the case at bar, the rescue of a rafter, or the rescue of any other distressed person.  In addition, as part of its processing procedures, all persons who are brought on board a Coast Guard cutter at sea are asked their name, date of birth and national origin, and are given an identifying bracelet.  The purpose of this procedure is to enable the Coast Guard to keep track of persons on board its vessels.  The nationality information is obtained for purposes of repatriation, if necessary.  This procedure is followed regardless of whether any criminal prosecution is contemplated.  This identification information is incorporated into a SITREP.

In the case at bar, the vessel containing the aliens had capsized and the persons

5

who had been on board the vessel were retrieved from the water by Coast Guard personnel.  When they were retrieved, they were placed on the deck of the DAUNTLESS, and Petty Officer Gabriel Guzman asked each person his or her name, date of birth and nationality.  Upon receiving the information, an identification bracelet was placed on each person.  The information regarding the deceased child was provided by the child's parents.  No other information was elicited by the Coast Guard.  This information was conveyed by Petty Officer Guzman to Lt. Lyle Server, who prepared the SITREP which included this information, and which is the subject of the pending motion.

According to the Government, the following day, the aliens were questioned by immigration agents regarding their identity and the circumstances surrounding their presence on the subject vessel.

III.    **FRAMEWORK FOR ANALYSIS**

There is no dispute that the Report constitutes hearsay, and that a prerequisite to its admissibility is a determination that it falls within an exception to the hearsay exclusion.  The Government relies upon the public records exception contained in FED. R. EVID. 803(8), which provides in pertinent part:

> (8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel.

If the report qualifies under this exception, the next step is to determine whether the contents of the report sought to be introduced are also hearsay; *i.e.*, whether the names reported by the aliens constitute hearsay.  If so, to be admissible, those statements would also have to fall within a hearsay exception as a prerequisite to

6

admission. *See. e.g., United States v. Bueno-Sierra*, 99 F.3d 375, 378-79 (11th Cir. 1996) (the business records exception to the hearsay rule does not eliminate double hearsay problems).  Stated another way:

> Since the guarantee of accuracy of public records admissible under Rules 803(8)(A) and (B) rests upon an official duty, i.e., a duty imposed by law upon a public official, to make an accurate record, all persons who participate in the initial furnishing of information must possess personal knowledge of matters related, Rule 602.  In addition the records must be made by a person with knowledge.  Finally all persons furnishing and recording information must be under an official duty to do so.  If the supplier of the information is not under such a duty to do so, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail.  An illustration is the report of a police officer incorporating information obtained from a bystander: the police officer qualifies as acting pursuant to an official duty but the bystander does not.  Of course, if the statement by one not under an official duty to report is not hearsay ... the statement is admissible ....

M. Graham, Federal Practice and Procedure: Evidence § 7049 at 605-606 (4th Interim Edition 2006) (footnote omitted).

In the case at bar, the Government contends that it is not offering the names for the truth of the matter asserted, but only to designate the individuals who were on board the smuggler's vessel when it capsized; therefore, the Government contends that this portion of the report is admissible.

Finally, assuming that there is a valid hearsay exception, the Court must examine whether the statements are "testimonial" and the admission of these statements violates the Defendant's Sixth Amendment right to confront the witnesses against him, as explained in *Crawford, supra.,* and its progeny.

7

IV.   <u>LEGAL ANALYSIS</u>

A. <u>The Situation Report</u>

The Government seeks to introduce into evidence a redacted version of the SITREP which contains the names given by the aliens when they were brought on board the DAUNTLESS.  As stated above, the Government contends that this Report falls within the public records exception to the hearsay rule, which is contained in FED. R. EVID.  803(8).  For the reasons stated below, the undersigned concurs with the Government.

There is little dispute that the report was created with respect to "matters observed pursuant to duty imposed by law as to which matters there was a duty to report."  FED. R. EVID. 803(8)(B).  However, the Defendant argues that the SITREP report cannot be admitted under this Rule because section (B) of the rule specifically excludes matters, "...in criminal cases...observed by police officers and other law enforcement personnel".  While at first blush, the Defendant's argument is appealing, the case law makes clear that under the facts of this case, the "law enforcement limitation" does not apply.

Indeed, the Eleventh Circuit has held that the public records exception does not exclude police records "prepared in a routine non-adversarial setting," as opposed to "those resulting from a more subjective investigation and evaluation of a crime." *United States v. Brown*, 9 F.3d 907, 911 (11th Cir.1993) (per curiam) (holding that admission of regularly kept property receipts did not violate Rule 803(8)(B)).  As stated by the Fifth Circuit in *United States v. Quezada*, 754 F.2d 1190 (5th Cir. 1985):

The law enforcement exception in Rule 803(8)(B) is based in part on the presumed unreliability of observations made by law enforcement officials at the scene of a crime, or in the course of investigating a crime:

8

[o]stensibly, the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant were not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases. (citing Senate Report No. 1277, 93d Cong.2d Sess., reprinted in [1974] U.S. Code Cong. & Ad. News 7051, 7064). Thus, a number of courts have drawn a distinction for purposes of Rule 803(8)(B) between law enforcement reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation.

In *United States v. Agustina-Hernandez*, 14 F. 3d 42 (11th Cir. 1994), the Eleventh Circuit cited *Quezada* in determining that a district court's admission of a defendant's immigration file into evidence at a trial on defendant's illegal reentry did not violate the law enforcement limitation of the public records exception to the hearsay rule.  In so doing, the court held that the admission of routinely and mechanically kept I.N.S. records did not violate Rule 803(8)(B), and noted that the custodian of the records had no incentive to do anything other than mechanically record the relevant information. *Id.* at 43.

Thus, although aspects of the interaction between the members of the crew of the DAUNTLESS and the subject vessel initially were arguably investigative, the focus became the rescue of the aliens who were in the water once the vessel capsized.  There is no evidence that the Coast Guard sought to obtain the names of the aliens aboard the subject vessel for purposes of initiating or furthering a criminal prosecution.  Instead, the Government proffered that the names of the aliens were collected by the Coast Guard as a matter of routine for any persons retrieved by the Coast Guard.  In this sense, this case is akin to *United States v. Brown, supra.,* where the government introduced a property receipt for a handgun into evidence, and the Eleventh Circuit upheld this decision, finding that the policeman who executed the property receipt had no incentive

9

to do anything other than mechanically record the relevant information on the property receipt. [4] *Brown*, 9 F.3d, 912.  Simply put, the law enforcement exclusion to Rule 803(8) does not apply under these circumstances.

Finally, the undersigned notes that the SITREP also may qualify as an exception to the hearsay rule pursuant to FED. R. EVID. 803(5), which provides: "A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly," is not excluded by the hearsay rule. The Rule also provides, however, that if admitted, the record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

In this case, the SITREP was prepared by a member of the DAUNTLESS crew who was given the names of the people from the capsized vessel and memorialized that information in the SITREP.  At trial, if that crew member testifies and is unable to recall the names of the persons that were provided to him, pursuant to 803(5) he would be allowed to rely on the SITREP to enable him to testify fully and accurately, and further,

---

[4]  In *Brown*, the Eleventh Circuit also analyzed the admissibility of the property receipt for the weapon under FED. R. EVID. 803(6), which provides a hearsay exception for records kept in the regular course of business, and examined whether the government established a proper foundation for the admission of the receipt on this ground. *Id.* at 911.  While the Court cautioned against the use of 803(6) as a way to "backdoor" evidence that would not be admissible under Rule 803(8), the Court found that the government established that it was the regular and customary procedure to fill out a property receipt for the type of evidence at issue. *Id.* The Court also concluded, as discussed herein that the type of evidence was not the type contemplated by the law enforcement exclusion of Rule 803(8).  Similarly, in this case, based upon the proffer at the hearing by the Government, and if the same foundation is properly laid at trial, the names contained in the SITREP may also be admitted as an exception to hearsay pursuant to Rule 803(6) as a Record of Regularly Conducted Activity.

the SITREP could be read into evidence.  Thus, the portions of the SITREP that the Government seeks to introduce may, if a proper foundation is established, be admitted as an exception to the hearsay rule on this ground, as well.

### B.  The Names Given by the Persons Brought On Board the DAUNTLESS

For the reasons stated below, the undersigned concludes that the names provided to Petty Officer Guzman are not hearsay because they are not being offered in this instance for the truth of the matter asserted.[5]  Federal Rule of Evidence 801 provides, "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter being asserted."  Under this definition, the names at issue in the case at bar are not hearsay.

---

[5] As noted previously, at the hearing, the Government agreed to redact the nationality and the birth date of the aliens from the SITREP.  This concession was made in response to comments by the undersigned at the hearing regarding the need to establish that the statements included within the report must also be the subject of an independent hearsay exception: "Both levels of hearsay must come under an exception or, otherwise, have an independent basis of admissibility to be considered by the Court." *United States v. Pendas-Martinez*, 845 F.2d 938, 942 (11th Cir.1988).  The undersigned ultimately did not have to rule on the other information contained in the aliens' statements related to their birth dates and nationality because the Government withdrew that portion of its Motion.  Nonetheless, the undersigned notes, as she did in the hearing, that if the declarants were unavailable such information might fall within Federal Rule of Evidence Rule 804(b)(4), which provides,

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (4) Statement of personal or family history. (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated.

See *United States v. Pluta*, 176 F. 3d 43 (2nd Cir. 1999) (analyzing hearsay statement regarding the nationality of a declarant under Fed. R. Evid. 804(b)(4)).  The Government stated that it did not claim that any of the aliens who made statements to Petty Officer Guzman were unavailable.

At the outset, the undersigned notes that it is irrelevant whether the correct name of the person aboard the vessel was given to Petty Officer Guzman because the Government does not seek to prove that the names given on the ship reflect the true identity of the person who gave the name.  Rather, the SITREP indicates that certain persons who identified themselves by a particular name were present on the vessel; the true identity of those persons is irrelevant.  The Government intends to prove alienage by other means.  As such, the statements in the SITREP report are not hearsay. See *Tennessee v. Street*, 471 U.S. 409 (1985) (stating where prosecutor did not introduce out of court statement for truth of assertions in statement, then statement did not qualify as hearsay under traditional rules of evidence).

Moreover, there is authority to support the proposition that a name, in and of itself, is rarely, if ever, hearsay.  As stated by the Court in *United States v. Allen*, 960 F.2d 1055, 1059 (D.C. Cir. 1992) (citations omitted): "One virtually always learns a name–even one's own–by being told what it is.  Nevertheless, evidence as to names is commonly regarded as either not hearsay because it is not introduced to prove the truth of the matter asserted, or so imbued with reliability because of the name's common usage as to make any objection frivolous."  *Accord United States v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980) ("We do not think that the name is hearsay. In a sense, it is. We can know a person's name only by being told, either by the person or someone else, unless, of course, we happen to have christened the person. But a name, however learned, is not really testimonial. Rather, it is a bit of circumstantial evidence.").

In the case at bar, the Government is seeking to prove that the Defendant was part of a conspiracy to smuggle 29 specific individuals into the United States.  It has identified these persons by the names they gave when they were rescued.  It does not

12

matter whether these were their true names or not; in fact, the Government is not required to prove the true identity of these persons, only that they were aliens who were attempting to enter the United States unlawfully.  *See United States v. Gari*, 572 F.3d 1352, 1363 n.9 (11th Cir. 2009) (identification of alien is not an element of alien smuggling offense), *citing United States v. Powell*, 498 F.2d 890, 892 (9th Cir. 1974) (name of a smuggled alien is not an element of 8 U.S.C. § 1324(a)(2), and mention of names in Indictment was surplusage no requiring proof). Thus, the names are not hearsay, and the Government may introduce either testimony or records regarding the names provided by those persons.

### C.  The Right to Confront Witnesses

In addition to determining that the admission of the SITREP does not run afoul of the hearsay rules, the court must also ensure that the Defendant's right to confrontation is not violated by the introduction of such evidence.  As stated unequivocally by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 68 (2004), "where testimonial [hearsay] evidence is at issue...the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. Thus, if the information that the Government seeks to introduce in the SITREP report qualifies as testimonial evidence, then it is subject to the limitations set forth in the Sixth Amendment, and thus not admissible under these facts.  Although the Court declined to provide a comprehensive definition of what qualifies as testimonial evidence, the Court suggested that business records, by their nature, were not testimonial.  541 U.S. at 56.

In *Davis v. Washington*, 547 U.S. 813, 822 (2006),  the Supreme Court provided additional guidance regarding the determination of whether statements are testimonial. In holding that the contents of a 911 call were not testimonial, the Court stated:

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

Although the precise issue before this Court has not been decided by the Eleventh Circuit, in *United States v. Baker*, 432 F.3d 1189 (11th Cir. 2005), the Court examined the guidelines set forth in *Crawford* and provided the following guidance:

> ...formal statement[s] to government officers are generally testimonial.  So is ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially. Similarly, extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial, fall within the core class of testimony.

(citations and quotations omitted).  The Court continued:

> Statements taken by police officers in the course of interrogations are definitively testimonial. [S]tatements given in a formal interrogation setting at a police station and witness statements given to an investigating police officer are both considered testimonial....

*Id.* at 1203-05 (citations and quotations omitted).

In this case, the Government asserts that the names given by the aliens to the members of the DAUNTLESS crew are not testimonial in nature.  The undersigned agrees.  The identifying information, in the form of names, would not lead an objective

14

witness to reasonably believe that the statements would be used for prosecutorial reasons that would necessitate that the Defendant have an opportunity to cross-examine the aliens in order to preserve his rights to confrontation.  Nor were the aliens subject to a custodial police interrogation when they were interviewed and provided their names to crew members of the DAUNTLESS.  Rather, given that the Coast Guard was carrying out the rescue of the aliens from the water when obtaining their identity information, the circumstances indicate that the primary purpose of gathering the information was more akin to that needed to meet and resolve an emergency, than to establish a criminal prosecution or investigation.

Other courts have determined that similar information was not testimonial, and the admission of such evidence did not violate the defendant's confrontation rights.  *See, e.g., United States v. Lopez-Moreno*, 420 F.3d 420, 436 (5th Cir. 2005) (holding that photocopy of identification card does not violate Confrontation Clause because it does not involve a witness bearing testimony); *United States v. Abimel Caraballo*, 08-20266-ALTONAGA, (S.D. Fla. October 15, 2008), (information contained in I-213 Forms which included biographical information such as the name and country of citizenship of an alien was deemed not to be testimonial and therefore admission did not violate the Confrontation Clause).

In its Opposition to the Government's Motion the Defendant relies on *United States v. Gonzalez-Marichal*, 317 F. Supp. 2d 1200, 1202 (S.D. Cal.2004), wherein a statement by a material witness regarding her nationality to a border patrol agent was determined to be testimonial and not admissible under *Crawford*.  However, because the Government in the case at bar is no longer seeking to admit the information in the SITREP related to the aliens' nationality, the analysis in *Gonzalez-Marichal* is not

applicable to the instant case.  In fact, the court in *Gonzalez-Marichal* expressly declined to opine whether the material witness' statement of her name constituted testimonial evidence within the meaning of Crawford. *Id.* at 1204 n.3.

Thus, give the Supreme Court's holding in *Crawford,* and its progeny, the undersigned concludes that neither the names of the aliens nor the SITREP which contains those names, are testimonial evidence; and, therefore the admission of the SITREP does not contravene the Defendant's Sixth Amendment right to confront the witnesses against him.

### V. CONCLUSION

Based on the foregoing, and for the reasons stated at the hearing, it is hereby

**ORDERED AND ADJUDGED** that the Government's Motion in Limine to Admit Public Record Pursuant to FED. R. EVID. 803(8) (DE # 31) is **GRANTED, in part,** as to the names of the aliens contained in the SITREP.  However, the undersigned recognizes that this determination is made, in part, based upon the proffer made by the Government at the hearing and with the assumption that the Government will lay any requisite foundation before seeking to introduce the SITREP report.  Thus, the trial court will be in a better position to make an ultimate determination of admissibility of this evidence. Therefore, the motion in limine is conditionally granted and this Order is without prejudice to the Defendant's right to object to this evidence at the trial.

**DONE AND ORDERED** in chambers in Miami, Florida on October 9, 2009.

*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
**The Honorable K. Michael Moore,  United States District Judge**
**All counsel of record**